To the fifth case, the United States v. Douglas. Mr. Gable. Good morning, Your Honor. It pleases the Court, my name is Thomas Gable. I'm an Assistant Federal Public Defender for the Southern District of Illinois. The question for the Court today is whether or not the District Court plainly erred in imposing several conditions of release that are not supported by the appellant's history and characteristics that are overly broad and are likely to reduce the likelihood of an appellant's successful completion of supervised release. So on the assessment of your client, your client had two prior sexual offenses, never completed treatment, they were years apart. I just can't understand why that wasn't reasonable for the Court to order an assessment, to get something more current. Your Honor, first off, there's no evidence, there's an inference that he did not complete. The PSR writer did not say he did not complete it, said he was ordered to do it, then six months later he was revoked with no determination why he was revoked. And so the defense didn't clear that up on the record and say he completed it? Is that what you're saying? I'm saying I did not address it at that time. Okay, so if he didn't have, if the district judge didn't have anything contrary and it just says he was ordered to do it and there's nothing that says completed, because you know typically in those reports it will say it was completed, or he finished that, or he saw he had treatment or something. I've seen numerous reports that go both ways, Your Honor. But nothing was said? Nothing was said and there's no evidence that he completed it. Okay. But when you look at Mr. Douglas' facts and characteristics, Your Honor, the offenses are not recent. One's 16 years old now, was 14 years old when he failed to register, and the other one happened seven years before that. There are no red flags. He's 60 years old at sentencing. The sex offenses occurred at age 37 and 43. He's been in the community since 2000, 14 years without any of the red flags for sexual misconduct. If you look at the offenses themselves, Your Honor, there's no grooming or planning. Both occurred when he was intoxicated. He was likely to be caught because it occurred with children that he knew or in the family. There was no measures to try to talk to victims in the not testifying or hiding it. And he did not persist when the victims objected. It's mostly the age and lack of the red flags that we object to the condition, but there's some other things, too. The judge actually gives the treatment provider the ability to impose any conditions with no limits. So the treatment provider can set the terms and conditions of the supervised release in this area. And you don't think you would have had an opportunity. Let's assume the treatment provider did have some conditions. There would not be an opportunity for the defense to object? No, Your Honor. What's going to happen is when he gets out of prison, he's not going to have a lawyer. He's going to do the assessment, and the treatment plan is going to go forward at that time. He's not going to have a lawyer then. So if we adopt that view, it becomes essentially impossible to impose this term for supervised release, right? Well, it all depends on whether or not you have the red flags that would indicate that he's likely to reoffend. This is a separate issue. The issue you're raising now is about whether the district judge can order compliance with rules of a treatment plan that hasn't even been ordered yet, right? That's correct, Your Honor. And that's an argument that would apply whether there's a good reason, bad reason, or no reason for imposing the treatment requirements. That's correct, Your Honor. If so, the argument you're making would seem to make it impossible to impose as a condition of supervised release compliance with the terms of such a program, particularly since those things obviously can change a good deal over the course of a prison sentence. That's true. One of the things that concerns me is that the people that do the assessment also do the treatment. I've never seen someone order for an assessment and not get ordered for treatment. That's okay. That's a separate issue that's also, in my view, not right. But could you go back and explain to me whether you think a district judge can impose a requirement that a defendant on supervised release comply with conditions, for example, of a drug treatment program, a mental health treatment program, sex offender treatment program, or anything similar without full disclosure at the time of sentencing of what those rules are? Well, Your Honor, I think he can, but you have to make it so it's tailored to the individual. Okay. By that, I mean this client was drunken around children, and he abused females. So allowing an assessment that says you can't be around any children would be incorrect. It could be, yeah. Do we know whether that's going to happen? No, Your Honor, we don't. Okay. Were any of these objections raised before the district court? No, Your Honor. This hearing occurred a couple of weeks after, if I recall correctly, our decision in Thompson, right? That's correct, Your Honor. It was right around Thompson. So Thompson is going off like a bombshell in the Seventh Circuit and the district courts in the Seventh Circuit, and given that it puts all these issues on the table, why shouldn't we apply our ordinary rules of plain error and waiver based on the failure to object? Well, I think it's definitely plain error, Your Honor, because there's no objections raised. I don't think there's waiver here, Your Honor. Some of the conditions, like the condition where my client can't enter establishments that, excuse me. Bars and clubs. Entering or patronizing establishments where alcohol. Oh, bars, lounges, and nightclubs. My client's a dishwasher. He busses tables, and he's a cook. And you can get exceptions for that. I mean, he just has to tell his probation officer, right? Not probation officer. Yeah, the probation officer. He's going to be looking for work in all those type places because that's where he goes. Right. So I'm saying that's what he tells the probation officer. This is where I'm going to be looking for jobs. Well, it would be easier if that wasn't. For my client to try to find work, it would be easier if that condition was cleaned up. Permit a probation officer to visit him at any time at home or elsewhere. Any time. That's a very broad time period. Do you think that kind of term is per se invalid, or can it be reasonable under appropriate circumstances? That could be reasonable under appropriate circumstances. My client's criminal history, while it's terrible with the two sex crimes, Your Honor, is not so extensive that he needs to be monitored 24 hours a day at 3 o'clock in the morning. He's not someone that's been known to do any crime while he's associated with a third party. None of his crimes have been two people doing an evil act. They're all things like domestic battery, battery of a police officer, having a gun in a car. There'd be nothing there that would show that you need to have some of the conditions that were put on him. So I want to go back to this. He wouldn't have a lawyer while he's on supervised release. Because he's on supervised release, and let's say the doctor puts him in a treatment plan. He can refuse to take the treatment. The probation officer will pull him up for a violation of supervised release. He'll get a lawyer, right? Right, Your Honor. He could end up being confined while he gets a lawyer, because that's what would happen. No, there's a possibility that that would happen, but it would just be there would be a motion filed,  A lawyer would be appointed. So he would be entitled to counsel. But it would be after the fact rather than during the assessment process, Your Honor. It's not like we could get a copy of the assessment, look at it and say, This is wrong, this portion of the plan is wrong. He'd have to try to modify the plan. So could you say to the district court, and when the assessment is done, Your Honor, We would like to have the ability to come before the court if conditions are set. That would be a better solution. Your Honor, I notice I'm in my rebuttal time, so I'll save a couple minutes, hopefully. Thank you, Mr. Gable. Thank you. Mr. Kelbley. May it please the court, my name is Shane Kelbley. I represent the United States. I'd like to begin by reiterating that the government has conceded that in light of this court's recent jurisprudence in Thompson and Cappy's, a remand and resentence is in order due to the supervisor lease term that failed to fully define associating with felons. I've got to say, Mr. Kelbley, I was very troubled by your concession. And I'm trying to imagine telling a district judge, you've got to do this entire thing over again because you didn't define associate. In this case, it is correct, isn't it, that the association with felons provision does include a knowledge requirement? Yes, there is a scienza requirement. And there is also an escape valve with permission of the probation officer, correct? Yes, Your Honor. Now, those facts distinguish this from Cappy's. What more is needed? Well, Your Honor. Should we have the district judge look up the word in a dictionary and tell the defendant what the definition is? I believe our concession is based on a recognition of the language in Cappy's and Thompson that provided sort of a best practice for this type of… Yeah, best practice is one thing. Conceding a need for remand when we're up here on plain error with no objections, if you thought it was vague in the district court and apparently nobody did, that would have been the time to deal with it. But I don't see any need for a remand to define associate under these circumstances. Well, Your Honor, we'd be happy to limit our concession to simply remand for restructuring the supervised release terms. Our concession for a full resentencing and restructuring… What else do you think needs restructuring? Nothing, Your Honor. Yeah, okay. I understand you conceded, but I'm telling you, I don't see a need for that. Okay, okay. Well, I'd like to start by talking about the sex offender assessment. The district court did not plainly err nor did it abuse its discretion in ordering sex offender assessments and possible treatment, if necessary, as a supervised release condition. To the extent an appellant is challenging treatment, that's just not a challenge that is ripe for review at this point. This court has been faced with a similar question in Cappy's earlier this year and in U.S. v. Rhodes back in 2009. In both of those cases, there was a supervised release term where a defendant was given physiological testing and they objected and appealed to this court saying that physiological testing might possibly include a specific type of test. I think it's called plethysmography that they didn't want to have. And in both cases, this court found that the issue wasn't ripe for review because it involved way too many contingencies. And the same rationale applies in this case. What has been ordered is a sex offender assessment, not sex offender treatment. It's far less onerous. Sex offender treatment is a possible, possible result, but it's not ordered in the district court's supervised release terms. I wanted also to talk for a second about the case appellant primarily relies on here. It's U.S. v. Johnson in 2014 decided by this court, where this court found that sex offender treatment, this is treatment which is beyond an assessment obviously, was not appropriate for a defendant convicted of drug trafficking based on one 15-year-old sexual misconduct misdemeanor. Now Johnson is very distinguishable from this case because it involved a less serious crime that involved no jail time. It was only one crime, whereas in this case there were two crimes against minors that were felonies and involved jail time. And more importantly, the crux of this argument is this. Appellant seeks to draw a bright line test, a bright line rule, saying that if there's no sex abuse within the last five years, sex offender treatment, sex offender assessment is never going to be something that's appropriate. And I think that goes against this court's jurisprudence in Cappies and Thompson because this court has always stressed there needs to be an individualized assessment of each offender with regard to the 3553A factors, and that's what the court did in this case. It noted appellant's history of repeated abuses against minors, his habit of breaking the law, his habit of failing to register, and most importantly, it tied all this to his severe ongoing alcohol abuse. That's really the thing that takes us through the temporal connection. The court noted multiple times that the appellant had a serious, serious alcohol addiction and also noted that in the PSR the appellant had admitted to his PO that a lot of his criminal behavior was a result of that drinking behavior. And so the court saw this as a continuing problem and decided appropriately to impose sex offender assessment treatment as a condition of supervised release. As to the patronizing establishments where intoxicants are the primary item of sale, I would say that this condition has been upheld by this court in another form many times on prohibitions for people with gambling problems going to, say, casinos, or I believe the language is places where gambling is the primary revenue stream. The district court in this case... Does it specify whether the gambling has to be legal or not? I don't know, Your Honor. I don't think so. The district court discussed at length in this case appellants, as I said before, serious alcohol addiction and noted the appellant himself has admitted that alcohol abuse was related to his prior crimes. And it linked this specific term of supervised release to those factors. And so it's not impermissibly vague or unreasonably burdensome. And the last thing I'll say on this condition is that in Adkins, which was one of this court's early supervised release terms, this court gave a little bit of guidance to district courts who were struggling a little bit with trying to come up with specific terms. Adkins said, one of the ways that you can form a supervised release term on prohibition on where to go is by giving specific examples. And the district court in this case did just that. They said, I believe, bars, lounges, and nightclubs. And as Your Honor pointed out earlier, there can always be exceptions. If the appellant wants to get a job as a short order cook at a bar, there's nothing preventing him from going to his parole officer and asking for that exception or even asking for a modification from the district court. And that's why we don't think this is a problematic supervised release term. Regarding the other issues, unless there are any questions, the government would rest on its briefs. Thank you. Thank you, Mr. Kelby. Ms. Gable. Just real quick, Your Honor. We didn't mean to imply there was a bright line rule in any way, shape, or form. It's been 16 years since my client had a sex offense, not five. But that wouldn't matter if there had been any of the red flags that are associated with someone that's going to re-offend. My client is an alcoholic. That we willingly admit. And he needs alcohol treatment. That we willingly admit. The question is on the sex offender assessment, is that needed in this case? Because we should be tailoring the different terms of supervised release to the individual. And we don't think it's needed in this case. With that, I'll sit down. Thank you, Your Honor. All right. Thank you, Ms. Gable. Thank you, Mr. Kelby. The case is taken under advisement.